UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES COMMODITY FUTURES TRADING COMMISSION,<br><br>          **Plaintiff,**<br><br>          v.<br><br>DONALD R. WILSON AND DRW INVESTMENTS, LLC,<br><br>          **Defendants.** | Case No. 13-7884 (AT/KF) |

**PLAINTIFF UNITED STATES COMMODITY FUTURES TRADING COMMISSION'S RESPONSE IN OPPOSITION TO BRIEF OF *AMICI CURIAE***

A. Daniel Ullman II (*pro hac vice*)
Paul G. Hayeck (*pro hac vice*)
Jason Mahoney (*pro hac vice*)
Jonah McCarthy
David Kent (*pro hac vice*)
U.S. Commodity Futures Trading Commission
Division of Enforcement
1155 21st St., N.W.
Washington, DC 20581
(202) 418-5400 (telephone)
(202) 418-5523 (facsimile)
dullman@cftc.gov
phayeck@cftc.gov
jmahoney@cftc.gov
jmccarthy@cftc.gov
dkent@cftc.gov

Michael R. Berlowitz
140 Broadway, 19th Floor
New York, NY 10005
(646) 746-9759 (telephone)
(646) 746-9940 (facsimile)
mberlowitz@cftc.gov

**ATTORNEYS FOR PLAINTIFF U.S.
COMMODITY FUTURES TRADING COMMISSION**

Pursuant to the Court's June 15, 2016 Order (ECF No. 132), plaintiff U.S. Commodity Futures Trading Commission ("Commission") respectfully submits its response in opposition to *amici curiae*'s ("*amici*") brief ("*Amici* Br.") (ECF No. 133). In short, *Amici*'s brief (1) directly contradicts the law of the case; (2) ignores all undisputed facts about defendants' specific intent to define and affect prices; (3) jettisons *without reference* all adverse case law; and (4) disproportionately relies on one Commission case from 1982. Specifically, *amici*'s attempt to mischaracterize the controlling case law on intent—including the Court's holding in *CFTC v. Wilson*, 27 F. Supp. 3d 517, 531-32 (S.D.N.Y. 2014)—as a departure from precedent, should be rejected. Indeed, there is nothing "new" about the intent standard the Court applied in *Wilson*; the Court based its decision on precedent dating back to 1977. Moreover, a ***majority*** of *amici*, when acting independently, and not as "friends of the litigants" as they are here, publicly touted *Wilson*'s intent standard as "traditional," "long standing," and "familiar." Last, the central premise of *amici*'s brief is flawed. Under any standard, trading with the specific intent to unilaterally affect and define prices—like defendants Donald R. Wilson and DRW Investments, LLC (together, "defendants") undisputedly did—is manipulative intent.

I.  **_AMICI_'S PROPOSED INTENT STANDARD IS CONTRADICTED BY THE LAW OF THE CASE AND RELEVANT PRECEDENT.**

Two legal flaws permeate *amici*'s brief. First, *amici* ignore the 30 years of federal and Commission precedent after *In re Indiana Farm Bureau Cooperative Ass'n* (*Indiana Farm*), CFTC No. 75-14, 1982 WL 30249, at *3 (Dec. 17, 1982), including the law of the case in *Wilson*. Second, *amici* mischaracterize precedent by conflating two fundamentally different states of mind: (1) trading with the expectation that new prices could occur based on legitimate market forces—not the facts here; and (2) trading with the *specific intent to define new prices*—precisely what the undisputed facts establish that defendants did here.

*Amici* (like defendants) argue that in order to prove attempted manipulation, "the CFTC must prove that a defendant specifically intended to create an artificial price[.]" *Amici* Br. at 2. *Amici* are mistaken. Rather, to establish attempted manipulation, the CFTC must prove "(1) an intent to affect market prices and (2) an overt act in furtherance thereof." *Wilson*, 27 F. Supp. 3d at 531-32 (citing *CFTC v. McGraw-Hill Cos.*, 507 F. Supp. 2d 45, 51 (D.D.C. 2007)); *see also DiPlacido v. CFTC*, 364 F. App'x 657, 661 (2d Cir. 2009) (citing *In re Cox*, CFTC No. 75-16, 1987 WL 106879, at *4 (July 15, 1987)); *CFTC v. Amaranth Advisors, L.L.C.*, 554 F. Supp. 2d 523, 532 (S.D.N.Y. 2008), *reconsideration denied*, 554 F. Supp. 2d 523 (S.D.N.Y. 2008); *CFTC v. Parnon Energy Inc.*, 875 F. Supp. 2d 233, 250 (S.D.N.Y. 2012); Pl.'s Mem. in Support of Mot. for Partial Summ. J. ("Pl.'s Mem.") at 19-20 (ECF No. 109); Pl.'s Resp. in Opp. to Defs.' Mot. for Summ. J. ("Pl.'s Opp.") at 27-42 (ECF No. 119). Despite *amici*'s and defendants' arguments to the contrary, artificiality is not an element of attempted manipulation. *Id.*

Moreover, contrary to *amici*'s claim, there is nothing "new" about the intent standard the Court applied in *Wilson*. *Amici* Br. at 4-5. The Court's holding was based on, and is completely consistent with *DiPlacido*, *Amaranth*, *Parnon*, and *In re Cox*, all of which *amici* curiously ignore. *See Wilson*, 27 F. Supp. 3d at 531-32; *DiPlacido*, 364 F. App'x at 661 (holding that the applicable intent standard is the intent to affect market prices); *Amaranth*, 554 F. Supp. 2d at 532-33 (specifically rejecting the argument that the standard is intent to create an artificial price);

1

*Parnon*, 875 F. Supp. 2d at 250 (holding that the intent required is "an intent to affect the market price of a commodity"); *In re Cox*, 1987 WL 106879, at *4; *see also* Pl.'s Mem. at 19-20; Pl.'s Opp. at 27-42.  Thus, *amici*'s assertion that the CFTC is seeking a "reversal of its precedents on attempted manipulation" and "recast[ing] three decades of law," is baseless.  *Amici* Br. at 4, 5, and 8.

Further, by suggesting that the CFTC relies too heavily on "an oft-quoted short-hand summary of the elements of manipulation[,]"*amici* ignore that in *Wilson*, the Court explained, with great specificity, what "intent to affect market prices" means and defined acting "with the purpose or conscious object of causing or effecting a price or price trend in the market that did not reflect the legitimate forces of supply and demand."  *Amici* Br. at 5; 27 F. Supp. 3d at 532 (quoting *Parnon*, 875 F. Supp. 2d at 249); *see also* Pl.'s Mem. at 19-26; Pl.'s Opp. at 29-33.  In this regard, the Court held that defendants' intent to affect prices can be established by showing "[d]efendants' intentional efforts to increase the daily settlement rates and move the IDEX Curve in order to affect market prices and produce profits for [d]efendants."  *Wilson*, 27 F. Supp. 3d at 533.

Finally, *amici*'s claims regarding *Indiana Farm* ring hollow.  First, *amici* ignore the law that developed during the three decades since *Indiana Farm*, including *Wilson*, *DiPlacido*, *Amaranth*, *Parnon*, *and In re Cox* – all of which cite *Indiana Farm* and hold that the proper standard is intent to affect price.  Notably, it was not necessary in those cases to "set aside" *Indiana Farm*, and it is not necessary for the Court to do so here, as *amici* assert.  *Amici* Br. at 8.  Last, *amici* ignore the central, undisputed fact that distinguishes this case from *Indiana Farm* and every other manipulation case *amici* and defendants cite.  Here, it is undisputed that defendants bid with the intent to create and define new prices that they, alone, believed were "fair."  *See* Pl.'s Mem. at 20-25.  The *Indiana Farm* defendants did not admit to attempting the alleged "squeeze" or argue that their conduct was lawful because the prices they sought to create were closer to "fair" prices.  1982 WL 30249, at *10-12.[1]

## II.   *AMICI*'S PUBLIC POLICY FEARS ARE SELF-CONTRADICTORY.

*Amici* posit a doom-and-gloom scenario that this "new" thirty-year old standard for attempted manipulation will "upset settled trading expectations and practices, and risk compromising the many public interests that derivatives markets serve[.]"  *Amici* Br. at 6.  *Amici* fail to cite a single article, academic paper, fact, or evidence in support of this bare conclusion.  *Id.*  Quite the contrary: at least three *amici* previously and publicly endorsed the legal standard they now attack, accurately describing it as "traditional," "long standing," and "familiar."  *See* Letter from MFA to CFTC, dated Dec. 28, 2010, at 6-7 (ECF No. 131-3) (touting the "traditional" manipulation standard in *McGraw-Hill*, "intent to affect market prices"); Letter from FIA to CFTC, dated Dec. 28, 2010, at 9 n.21, 12 (ECF No. 131-4) (endorsing the standard in *McGraw-Hill*, describing it as the "traditional" and "long-standing test"); Letter from CME to CFTC, dated Jan. 3, 2011, at 11 (ECF No. 131-5) (approving of applying the "familiar" four prong test – the test applied in *DiPlacido* and *Cox*).

---

[1] Indeed, there is nothing inherently wrong with traders making decisions based on what they think will be profitable for them.  But a trader taking action for the purportedly altruistic goal of "correcting" a pre-existing price converts such decisions into unlawful conduct.

2

Moreover, in reality, it is the *amici*'s (and defendants') proposed intent standard that harms public policy and hollows the Commodity Exchange Act. *Amici* and defendants' standard, as applied, creates a rule-swallowing exception to anti-manipulation law. *See* Pl.'s Opp. at 39-41. In effect, the proposed standard grants all market participants license to unilaterally set prices, as long the manipulator intends to set prices that it, itself, believes are superior. *See id.* Every manipulator in the future would defend its actions with some post-hoc theoretical economic rationale for why the pre-existing price did not accurately reflect the pure market forces of supply and demand. *In other words, it grants an all-encompassing license for traders to manipulate prices*. *See id.* This perverse consequence might explain why *amici* fail to apply their proposed standard to the undisputed facts here, relying instead on hypotheticals.

### III.     *AMICI*'S HYPOTHETICALS BEAR NO RESEMBLANCE TO THIS CASE.

The hypotheticals *amici* offer to show that the CFTC's "new" standard will curtail legitimate trading are flawed. First, *amici*'s hypotheticals are inapposite to the undisputed facts in this case. *See generally Abdelfatah v. Elnenaey,* No. 14 Civ. 9014 (AT), 2016 WL 354032, at *2 (S.D.N.Y. Jan. 13, 2016) (Torres, J.) (noting that "federal courts do not sit to decide hypothetical issues or to give advisory opinions about issues as to which there are not adverse parties before the court") (citation and internal punctuation omitted). *Wilson* does not involve a hypothetical trader concerned that his innocent trading activity, with the benefit of hindsight, might be considered manipulation. This case involves real defendants who do not dispute placing real above-market bids with the real purpose and intent of setting new prices. *See* Pl.'s Mem. at 20-25.

Moreover, as shown below, *amici*'s hypotheticals conflate *intent* to affect price with the knowledge or expectation that a trading strategy could "merely 'affect price.'" *Amici* Br. at 10. The central flaw in *amici*'s argument is that the controlling standard does not forbid trading that merely "affects price" through legitimate market forces. The standard forbids trading with the *intent* to affect price. *Wilson*, 27 F. Supp. 3d at 531-32.

In the cattle rancher example, the trader is taking a speculative position based on her perception of market fundamentals and ability to profit from *expected* price movements. She is not trading *to affect* those price movements so she can profit, which would be manipulation. The investment manager example involves selling *in anticipation of* favorable price movements, not trading *to create* those price movements. While some of the hypothetical trading is during the settlement period, the trading is not designed *to set* the price, as in defendants' "banging the close" manipulative scheme. In the last example, the market maker is doing what market makers do: speculating by buying and selling for its own account. If the market maker trades to affect price, not simply to profit off the spread (or make a market), his trading would be manipulative.

*Amici*'s hypotheticals highlight one important point: the key question is not (and cannot logically be) whether a trader placed bids that could affect prices through legitimate market forces, as *amici* claim. The key question is whether the trader placed those bids *intending* to impact price, or as in this case, with the undisputed intent to define prices. If the answer is yes, as it is here, then the trader is liable for attempted manipulation. *See Wilson*, 27 F. Supp. 3d at 532.

Dated: July 13, 2016 Respectfully submitted,

/s/ Jonah E. McCarthy
A. Daniel Ullman II (*pro hac vice)*
Paul G. Hayeck (*pro hac vice*)
Jason Mahoney (*pro hac vice*)
Jonah McCarthy
David Kent (*pro hac vice*)
Division of Enforcement
1155 21st Street, N.W.
Washington, D.C. 20581
(202) 418-5334 (telephone)
(202) 418-5523 (facsimile)

Michael R. Berlowitz
140 Broadway, 19th Floor
New York, NY 10005
(646) 746-9759 (telephone)
(646) 746-9940 (facsimile)

**ATTORNEYS FOR PLAINTIFF**
**U.S. COMMODITY FUTURES TRADING**
**COMMISSION**

## **CERTIFICATE OF SERVICE**

    I hereby certify that on July 13, 2016, service of the foregoing document was made on the following parties via ECF:

Michael S. Kim, Esq.
Jonathan Cogan, Esq.
Jason Manning, Esq.
Melanie L. Oxhorn, Esq.
Kelly Spatola, Esq.
Kobre & Kim LLP
800 Third Avenue
New York, New York 10022

Andrew C. Lourie, Esq.
Kobre & Kim LLP
1919 M Street, N.W.
Washington, DC 20036

Attorneys for Defendants

Boris Bershteyn, Esq.
Skadden, Arps, Slate,
 Meagher & Flom LLP
Four Times Square
New York, New York 10036

Attorneys for *Amici Curiae*


                /s/ Jonah E. McCarthy