**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **UNITED STATES COMMODITY FUTURES TRADING COMMISSION,** | 13-7884 (RJS) |
| **Plaintiff,** | |
| **v.** | |
| **DONALD R. WILSON AND DRW INVESTMENTS, LLC,** | |
| **Defendants.** | |

<u>**PLAINTIFF UNITED STATES COMMODITY FUTURES TRADING COMMISSION'S MEMORANDUM IN SUPPORT OF ITS MOTION *IN LIMINE* NO. 2 TO EXCLUDE DEFENDANTS' WHITE PAPER AND ANY EVIDENCE AND TESTIMONY CONCERNING THE WHITE PAPER**</u>

U.S. Commodity Futures Trading
   Commission
Division of Enforcement
1155 21st St., N.W.
Washington, DC 20581
(202) 418-5400 (telephone)
(202) 418-5523 (facsimile)

**ATTORNEYS FOR PLAINTIFF
COMMODITY FUTURES TRADING
COMMISSION**

## <u>TABLE OF CONTENTS</u>

BACKGROUND ....................................................................................................................... 1

ARGUMENT ............................................................................................................................ 3

    I.      The White Paper is Hearsay, For Which No Exception is Available ..................... 4

    II.     The White Paper is an Expert Report, and Any Testimony Concerning the
           White Paper Would be Expert Testimony, For Which the Appropriate
           Foundation Has Not Been Established. ................................................................. 7

    III.    Reliance on the White Paper to Argue that DRW "Believed" that the
           Three-Month Contract was Mispriced or that Defendants' Conduct was
           "Justified" Should be Excluded Because a Witness May Not Opine on the
           Intent of a Party .............................................................................................. 10

CONCLUSION ....................................................................................................................... 11

## TABLE OF AUTHORITIES

### CASES

*Bank of China, NY Branch v. NBM LLC*,
  359 F.3d 171 (2d Cir. 2004) ................................................................................. 8, 10

*Borsack v. Ford Motor Co.*,
  No. Civ. 3255 (PAC), 2007 WL 2142070 (S.D.N.Y. July 26, 2007) ....................................... 8

*Bruneau v. Borden, Inc.*,
  644 F. Supp. 894 (D. Conn. 1986) .............................................................................. 9

*Daubert v. Merrell Dow Pharm., Inc.*,
  509 U.S. 579 (1993) ........................................................................................... 9

*Dell Publ'g Co., Inc. v. Whedon*,
  577 F. Supp. 1459 (S.D.N.Y. 1984) ............................................................................ 7

*DeVenustas v. Venustas Int'l, Inc.*,
  No. 07 Civ. 4530, 2007 WL 2005560 (S.D.N.Y. Jul. 10, 2007) .............................................. 5

*Fagiola v. Nat'l Gypsum Co. AC & S, Inc.*,
  906 F.2d 53 (2d Cir. 1990) .................................................................................... 5

*Forward Commc's Corp. v. United States*,
  608 F.2d 485 (Ct. Cl. 1979) ................................................................................ 7, 9

*Highland Capital Mgmt., L.P. v. Schneider*,
  551 F. Supp. 2d 173 (S.D.N.Y. 2008) .......................................................................... 3

*In re Fosamax Products Liability Litig.*,
  645 F. Supp. 2d 164 (S.D.N.Y. 2009) ......................................................................... 10

*In re Rezulin Prods. Liab. Litig.*,
  309 F. Supp. 2d 531 (S.D.N.Y. 2004) ......................................................................... 10

*In re Rezulin Prods. Liab. Litig.*,
  369 F. Supp. 2d 398 (S.D.N.Y. 2005) .......................................................................... 9

*Kumho Tire Co., Ltd. v. Carmichael*,
  526 U.S. 137 (1999) ........................................................................................... 9

*Lion Oil Trading & Transp., Inc. v. Statoil Mktg. & Trading (US) Inc.*,
  2011 WL 855876 (S.D.N.Y. Feb. 28, 2011) ................................................................... 5, 6

*Luce v. United States*,
    469 U.S. 38 (1984) ................................................................................................ 3

*Saks Int'l., Inc. v. M/V Export Champion*,
    817 F.2d 1011 (2d Cir. 1987) ............................................................................... 5

*Taylor v. Evans*,
    No. 94 Civ. 8425, 1997 WL 154010 (S.D.N.Y. Apr. 1, 1997) ............................... 10

*Tokio Marine & Fire Ins. Co, Ltd. v. Norfolk & W. Ry. Co.*,
    Nos. 98-1050, 98-1077, 1999 WL 12931 (4th Cir. Jan. 14, 1999) ......................... 8

*United States v. Feliz*,
    467 F.3d 227 (2d Cir. 2006) ................................................................................. 6

*United States v. Garcia*,
    413 F.3d 201 (2d Cir. 2005) ................................................................................. 8

*United States v. Strother*,
    49 F.3d 869 (2d Cir. 1995) ................................................................................... 5

*Yankee Bank for Fin. & Sav., FSB v. Task Assocs., Inc.*,
    139 B.R. 71 (N.D.N.Y. 1992) ............................................................................... 5

*Yates v. Blair Transp., Inc.*,
    249 F. Supp. 681 (S.D.N.Y. 1965) ....................................................................... 6

## RULES

FED. R. EVID. 701 ............................................................................................... 7, 8, 9

FED. R. EVID. 702 ............................................................................................... 1, 8, 9, 10

FED. R. EVID. 801 ............................................................................................... 4

FED. R. EVID. 803 ............................................................................................... 4, 6, 7

Pursuant to the Federal Rules of Evidence and this Court's inherent power to control the presentation of evidence at trial, Plaintiff U.S. Commodity Futures Trading Commission (the "Commission"), respectfully submits the following Memorandum in Support of its Motion *In Limine* No. 2 to Exclude Defendants' White Paper and Any Evidence and Testimony Concerning the White Paper.

As discussed below, defendants rely on a DRW-authored paper titled "Central Clearing of Interest Rate Swaps: A Comparison of Different Offerings," dated March 14, 2011 (the "White Paper"), and documents and testimony concerning this White Paper, to establish the truth of various conclusions purportedly made in the document.  However, the White Paper and any evidence referencing the White Paper should be excluded for at least three reasons.  <u>First</u>, the White Paper cannot be used to establish the truth of the matters asserted therein because it is hearsay, for which no exception is available.  <u>Second</u>, even if an exception were available, the White Paper constitutes an expert opinion, for which defendants have not laid an adequate foundation under Federal Rule of Evidence 702.  <u>Third</u>, defendants attempt to use the White Paper to infer their intent, and any testimony on this issue is outside the bounds of lay or expert testimony.

## **<u>BACKGROUND</u>**

Beginning in January 2011, and continuing through August 2011 (the "Relevant Period"), defendants Donald R. Wilson and DRW Investments, LLC ("DRW") (collectively, "defendants") implemented an illegal scheme centered around a futures contract called the IDEX USD Three-Month Interest Rate Swap Futures Contract (the "Three-Month Contract").  When the Three-Month Contract did not trade at a price the defendants thought it should have, instead of accepting the price established by the clearinghouse, defendants designed a manipulative

scheme to influence the daily settlement price of the Three-Month Contract, in order to increase the value of DRW's positions in the contract.

Around the time defendants started implementing their manipulative scheme, three employees of DRW—Radu Mondescu, Yuhua Yu and Jennifer Wilson—began authoring the White Paper with Rama Cont, a mathematics professor.[1]  The White Paper purported to (1) review "inherent" differences between cleared and uncleared interest rate swaps (Ex. D45 at D0127591-93);[2] (2) demonstrate that the price of cleared swaps diverged from that of uncleared swaps due to the "convexity bias" and "net present value" ("NPV") effect (Ex. D45 at D0127591; D0127593-95); and (3) examine whether new contract designs on various exchanges compensated for the purported deviation in value from their uncleared interest rate swap counterparts (Ex. 56 at D0127591; D0127595-612).  Notably, one of the new contract offerings examined by the authors was listed on the Eris Exchange—an exchange that was founded, and is currently co-owned, by DRW Trading Group.  Ex. D45 at D0127589.  This paper was never

---

[1] According to documents produced by defendants during discovery, the first draft of the White Paper is dated December 14, 2010, and was initially titled "Divergent Paths from OTC to Central Clearing for Interest Rate Swaps."  The final version of the White Paper is dated March 14, 2011, and is titled "Central Clearing of Interest Rate Swaps: A Comparison of Different Offerings."  *See* Cont et al., *Central Clearing of Interest Rate Swaps: A Comparison of Different Offerings* (Mar. 14, 2011), Ex. D45 (hereinafter, "Ex. D45").  The Commission uses the term "White Paper" through this memorandum to include all iterations of the White Paper, culminating in the final version dated March 14, 2011.

[2] "Ex. D__" refers to documents identified in Defendants' Exhibit List and "Ex. P__" refers to documents identified in Plaintiff's Exhibit List.  Per the Court's Pre-Trial Order, both parties are providing the Court with binders containing these proposed trial exhibits, which will correspond with the exhibit numbers cited in this memorandum.  If the Court would prefer, plaintiff is prepared to provide the Court with separate copies of each proposed trial exhibit referenced herein.

published in a peer-reviewed journal or other industry publication.  Mondescu Tr. 40:24-42:10,

attached as Exhibit A to P. Mot. in Limine No. 2.[3]

Throughout this litigation, defendants have relied on the White Paper to establish the

following disputed facts:

- The Three-Month Contract possessed convexity bias and the NPV effect, which distinguished it from uncleared interest rate swaps, and that its price was not adjusted to counteract this effect.  *See* Rule 56.1 Statement, ECF No. 105 ("Statement") ¶ D33.

- Because the Three-Month Contract possessed convexity bias and the NPV effect, DRW "believed" that there was an inherent difference between the values of the Three-Month Contract and uncleared interest rate swaps of the same tenor.  *See* Statement ¶ D37.

- The White Paper provided a "valid justification" for pricing the Three-Month Contract differently than the Corresponding Rates.  *See* Statement ¶ D79.

The Commission anticipates that defendants will seek to admit the White Paper, as well

as documents and testimony regarding the White Paper, into evidence to establish the same facts

at trial, but such evidence should be excluded for the following reasons.

## ARGUMENT

A district court's inherent authority to manage the course of its trials encompasses the

right to rule on motions *in limine*.  *See Highland Capital Mgmt., L.P. v. Schneider*, 551 F. Supp.

2d 173, 176 (S.D.N.Y. 2008) (citing *Luce v. United States,* 469 U.S. 38, 41 n.4 (1984)).  The

purpose of a motion *in limine* is "to aid the trial process by enabling the Court to rule in advance

---

[3] Attached as Exhibit A to this memorandum are the relevant excerpts of Radu Mondescu's deposition testimony.  Neither plaintiff nor defendants seek to admit his testimony at trial, and therefore the Court does have a copy of this transcript in the parties' pre-trial binders.  In the attached excerpt, Mondescu discusses two exhibits: (1) Exhibit 3, the initial December 14, 2010 draft of the White Paper; and (2) Exhibit 4, the March 14, 2011 final draft of the White Paper, Ex. D45.  Defendants have not included "Exhibit 3" in their Trial Exhibit List, so it is not attached hereto, but plaintiff will provide a copy to the Court if necessary.

of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Id.* (internal quotations omitted).

## I.      The White Paper is Hearsay, For Which No Exception is Available

Evidence is hearsay, and not admissible at trial, if it is an out-of-court statement being offered for the truth of the matter asserted.  FED. R. EVID. 801.  The White Paper is an out-of-court statement being offered for the truth of the matter asserted therein (i.e., the Three-Month Contract possessed "convexity bias" and the NPV effect, and that its price was not adjusted to counteract this effect).  *See* Statement ¶¶ D33, D37.  It is therefore inadmissible at trial unless it falls under an exception to the hearsay rule.  It does not.

DRW may attempt to argue that the White Paper is a business record, but this argument is belied by the language of Rule 803(6) itself.  Federal Rule of Evidence 803(6) allows documents, otherwise excluded as hearsay, to be admitted as business records if certain conditions apply.  FED. R. EVID. 803(6).  A business record is "[a] record of an act, event, condition, opinion, or diagnosis if:

> (A) the record was made at or near the time by—or from information transmitted by—someone with knowledge; (B) <u>the record was kept in the course of a regularly conducted activity of a business</u> . . . ; (C) <u>making the record was a regular practice of that activity</u>; (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and (E) <u>the opponent does not show that the . . . circumstances of preparation indicate a lack of trustworthiness</u>."

*Id*.

The comments to Rule 803(6) clarify that the requirement that "it must have been the regular practice of a business to make the record is a necessary . . . assurance of [the record's] trustworthiness."  FED. R. EVID. 803 advisory committee's note to 1974 amendment.  The mere fact that a document was created in the course of employment does not render it a business

record.  *See Lion Oil Trading & Transp., Inc. v. Statoil Mktg. & Trading (US) Inc.*, Nos. 08 CIV.

11315, 09 CIV. 2081, 2011 WL 855876, at *6 (S.D.N.Y. Feb. 28, 2011) (citing cases).

      As a threshold matter, DRW is a proprietary trading organization, and there is no

evidence in the record to suggest that writing research papers was a "regular practice" of DRW's

business.  *See* Statement ¶ D138.  Instead, the White Paper appears to be an isolated promotional

effort.  Accordingly, the White Paper cannot be admitted as a business record under Rule 803(6).

*See, e.g.*, *Fagiola v. Nat'l Gypsum Co. AC & S, Inc.*, 906 F.2d 53, 59 (2d Cir. 1990) (implying

that documents could not have been admitted under Rule 803(6) because the record was devoid

of any evidence that the documents "were kept in the course of a regularly conducted business

activity and that it was the regular practice of the business to make such records"); *Yankee Bank

for Fin. & Sav., FSB v. Task Assocs., Inc.*, 139 B.R. 71, 79 (N.D.N.Y. 1992) (excluding letter

because there was "no direct evidence in the record showing that it was [the party's] regular

practice to draft such a letter").

      Additionally, the "principal precondition to admission of documents as business records

. . . is that the records have sufficient indicia of trustworthiness to be considered reliable."  *Saks

Int'l., Inc. v. M/V Export Champion*, 817 F.2d 1011, 1013 (2d Cir. 1987).  Documents not

routinely created by a business, or prepared under atypical circumstances do not possess such

indicia of trustworthiness.  *See DeVenustas v. Venustas Int'l, Inc.*, No. 07 Civ. 4530, 2007 WL

2005560, at *2 (S.D.N.Y. Jul. 10, 2007) (citing *United States v. Strother*, 49 F.3d 869, 876 (2d

Cir. 1995) ("As the Second Circuit has noted, '[w]e are reluctant to adopt a rule that would

permit the introduction into evidence [as a business record exception to the hearsay rule] of

memoranda drafted in response to unusual or 'isolated' events, . . . particularly where the entrant

may have a motive to be less than accurate.") (alterations in original); *Lion Oil Trading*, 2011

WL 855876, at *6 ("Rule 803(6) does not except evidence of memoranda drafted in response to unusual or isolated events from the prohibition on hearsay.") (internal quotation marks omitted).

In the same vein, records created at the instance of the party for whom they are being offered, or that were created in anticipation of litigation, are not considered reliable and therefore are not business records under Rule 803(6).  *See* FED. R. EVID. 803 advisory committee's note to 1972 proposed rules (citing *Yates v. Blair Transp., Inc.*, 249 F. Supp. 681 (S.D.N.Y. 1965) ("If the report is offered by the party at whose instance it was made . . . it has been held inadmissible[.]"); *United States v. Feliz*, 467 F.3d 227, 234 (2d Cir. 2006) ("We know that because Rule 803(6) requires business records to be kept in the regular course of a business activity, records created in anticipation of litigation do not fall within its definition.").

The White Paper does not have the indicia of reliability required to classify it as a business record.  To the contrary, DRW employees co-authored the White Paper to promote a product offered by the Eris Exchange—a futures exchange which was founded, and is still co-owned, by DRW Trading Group.  *See* Ex. D45 at D0127612 ("A more elegant solution [than the Three-Month Contract] to the problem of clearing an interest rate swap is Eris's original methodology[,]" which could be "added to existing futures clearing systems relatively seamlessly.").  Tellingly, the paper was finalized the month after the General Counsel of MF Global, a potential counterparty, accused DRW of manipulating the market.[4]  Indeed, the timing

---

[4] On February 4, 2011, while DRW was finalizing the White Paper, Laurie Ferber, General Counsel and Executive Vice-President of MF Global Limited, accused Wilson during a telephone call of manipulating the daily settlement price of the Three-Month Contract.  *See* Wilson/Ferber Tr. 14:4-16, Ex. P13 ("But when, you know, the fact is those prices don't get traded on.  We all know how much volume goes through IDCG, and [DRW's bids] go up at 2:45 every day, so making sure the—make sure that the marks screw other people, 'cause, you know, it screws them, and that is what happens . . . [y]ou get to set the mark.  You get to set the—the marks.").

and evident self-serving nature of this White Paper indicate a lack of reliability and trustworthiness.

Finally, the White Paper is not a record of an act, event or diagnosis; rather it takes the form of an opinion.  Although Rule 803(6) includes recorded opinion evidence, admission of opinions "has been sought primarily in the area of medical diagnoses and laboratory reports, where the opinions concern objectively verifiable facts."  *Dell Publ'g Co., Inc. v. Whedon*, 577 F. Supp. 1459, 1464 n.5 (S.D.N.Y. 1984) (citing cases supporting finding that documents were not within business records exception); *see also* FED. R. EVID. 803 advisory committee's note to 1972 proposed rules (providing for admission of opinion records in the form of "medical diagnoses, prognoses, and test results, as well as occasionally in other areas") (emphasis added); *Forward Commc's Corp. v. United States*, 608 F.2d 485, 511 (Ct. Cl. 1979) ("It must be concluded . . . that the opinions referred to in Rule 803(6) . . . are incident to or part of factual reports of contemporaneous events or transactions.").

The White Paper sets-forth its authors' subjective opinions about the price level at which interest rate contracts "should trade," as well as which exchange's interest rate swap product best accounted for differences in valuation (and not surprisingly, finding that it was an exchange co-owned by DRW).  *See* Ex. D45 at D0127612.  These are not restatements of objectively verifiable facts.  As a result, the White Paper is not a business record.

**II.     The White Paper is an Expert Report, and Any Testimony Concerning the White Paper Would be Expert Testimony, For Which the Appropriate Foundation Has Not Been Established**

Even if subjective opinion evidence were to be permitted under Rule 803(6), Federal Rule of Evidence 701 precludes admission of the White Paper.  Rule 701 provides that "[i]f a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:

(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." FED. R. EVID. 701.  Rule 701 was amended to "eliminate the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing." FED. R. EVID. 701 advisory comments to 2000 amendments.  Consequently, courts scrutinize a witness's testimony under the rules regulating expert opinions to the extent that the witness is providing testimony based on scientific, technical, or other specialized knowledge. *Id.* ("[T]he Court should be vigilant to preclude manipulative conduct designed to thwart the expert disclosure and discovery process") (internal citations and quotations omitted).  Reports stating expert opinions are likewise inadmissible without the appropriate notice and foundation regarding the author's qualifications. *See Tokio Marine & Fire Ins. Co, Ltd. v. Norfolk & W. Ry. Co.*, Nos. 98-1050, 98-1077, 1999 WL 12931, *4 (4th Cir. Jan. 14, 1999); *Borsack v. Ford Motor Co.*, No. 04 CIV. 3255 (PAC), 2007 WL 2142070, at *4 (S.D.N.Y. July 26, 2007) (stating that "[e]vidence contained in an expert's report . . . must be evaluated under Rule 702" to be admissible at trial).

Notably, a lay witness may testify to issues about which he  has "personal," "particularized" knowledge by virtue of his position in a particular industry, but must be qualified as an expert if his testimony "results from a process of reasoning which can be mastered only by specialists in the field." FED. R. EVID. 701 advisory comments to 2000 amendments; *United States v. Garcia*, 413 F.3d 201, 216 (2d Cir. 2005); *Bank of China, NY Branch v. NBM LLC*, 359 F.3d 171, 182 (2d Cir. 2004) (finding error in admission of testimony under Rule 701 that was "not a product of [witness's] investigation" but rather "reflected [his] specialized knowledge").  Therefore, even if a document can be considered a business record

8

under Rule 803(6), to the extent that it presents "expert" opinions, the document and related

testimony is not admissible without first establishing the qualifications of the author pursuant to

Rule 702.  *See Forward Comm's Corp.*, 608 F.2d at 510-11; *Bruneau v. Borden, Inc.*, 644 F.

Supp. 894, 896 (D. Conn. 1986).

To qualify a witness as an expert, and correspondingly, admit a report containing expert

opinion, a defendant must satisfy the reliability requirements set forth in Rule 702 and disclose

the witness as an expert pursuant to Federal Rule of Civil Procedure 26(a)(2)(A).[5]  *See* FED. R.

EVID. 702; *Bank of China*, 359 F.3d at 182; *see also In re Rezulin Prods. Liab. Litig.*, 369 F.

Supp. 2d 398, 420 (S.D.N.Y. 2005) (courts may also consider "whether an expert's opinion was

developed for litigation").

The White Paper, and any testimony from the paper's authors regarding its contents,

should be excluded because it presents precisely the risk sought to be eliminated under Rule

701—that a party would offer an expert opinion as a lay opinion and thereby avoid establishing

the necessary foundation.  Even if the White Paper's authors were involved in analyzing the

Three-Month Contract in the course of their employment with DRW, their application of

mathematic and economic principles to four "available offerings of cleared interest rate swaps,"

and their conclusions regarding "the implications on [the products'] valuation" are solely based

---

[5] The Supreme Court, in *Daubert v. Merrell Dow Pharm., Inc.*, set forth a non-exclusive
checklist for trial courts to use in assessing the reliability of scientific expert testimony.  *See* 509
U.S. 579, 593-94 (1993).  The specific factors explicated in *Daubert* are (1) whether the expert's
technique or theory can be or has been tested—that is, whether the expert's theory can be
challenged in some objective sense, or whether it is instead simply a subjective, conclusory
approach that cannot reasonably be assessed for reliability; (2) whether the technique or theory
has been subject to peer review and publication; (3) the known or potential rate of error of the
technique or theory when applied; (4) the existence and maintenance of standards and controls;
and (5) whether the technique or theory has been generally accepted in the scientific community.
*Id.*  In *Kumho Tire Co., Ltd. v. Carmichael*, the Court held that these factors might also be
applicable in assessing the reliability of nonscientific expert testimony, depending upon "the
particular circumstances of the particular case at issue."  *See* 526 U.S. 137, 150 (1999).

on their specialized knowledge and expertise. *See* Ex. D45 at D0127591; *see also Bank of China*, 359 F.3d at 181 (finding that admission of lay witness testimony was error where it was not based "entirely on [the witness's] perceptions," but on his "experience and specialized knowledge"). To admit such testimony, defendants would have had to qualify the authors as experts under Federal Rule of Evidence 702 and disclose them as experts under Federal Rule of Civil Procedure 26, which they failed to do. Nor could they, because the White Paper was a subjective, self-serving paper than was not peer reviewed—or even published—and appears to have been written in anticipation of litigation.

## III.   Reliance on the White Paper to Argue that DRW "Believed" that the Three-Month Contract was Mispriced or that Defendants' Conduct was "Justified" Should be Excluded Because a Witness May Not Opine on the Intent of a Party

Inferences about the intent or motive of parties are outside the bounds of expert, or even lay, witness testimony. *See, e.g.*, *In re Fosamax Products Liability Litig.*, 645 F. Supp. 2d 164, 192 (S.D.N.Y. 2009); *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 541, 546 (S.D.N.Y. 2004) (noting that "musings as to defendants' motivations . . . would not be admissible if given by any witness-lay or expert") (citing *Taylor v. Evans*, No. 94 Civ. 8425, 1997 WL 154010, at *2 (S.D.N.Y. Apr. 1, 1997) (quotations and alterations omitted). The White Paper and any related evidence and testimony should be excluded to the extent they opine on defendants' intent.

Defendants cite to the White Paper, and the deposition testimony of Yu—one of the White Paper's authors—to support their argument that "[b]ecause the Three-Month Contract possessed convexity bias and the NPV effect, DRW 'believed' that there was an inherent difference between the values of the Three-Month Contract and uncleared interest rate swaps of the same tenor." Statement ¶ D37. Setting aside the fact that neither the White Paper, nor Yu's deposition testimony, actually support this statement, such argument or evidence should be

10

excluded at trial.  As discussed above, any testimony regarding the White Paper by one of its authors is an expert opinion.  However, even if an author's testimony about the White Paper were admitted as that of a lay witness, no witness is permitted to testify about the intent or motive of a party.  Likewise, defendants should not be able to elicit any testimony or opinion that defendants' conduct was somehow "justified."  Statement ¶ D79.

Accordingly, the Court should exclude any argument or evidence, including testimony, that relies on the White Paper to improperly opine on defendants' motive or intent.

## CONCLUSION

For the reasons set forth above, the Commission moves to exclude defendants' White Paper, including any evidence and testimony concerning the White Paper.


Dated: November 4, 2016                Respectfully Submitted,


                                       /s/ A. Daniel Ullman
                                       A. Daniel Ullman II (*pro hac vice*)
                                       Paul G. Hayeck (*pro hac vice*)
                                       Traci Rodriguez (*pro hac vice*)
                                       Jason Mahoney (*pro hac vice*)
                                       Jonah McCarthy
                                       Lucy C. Hynes (*pro hac vice*)
                                       U.S. Commodity Futures Trading Commission
                                       Division of Enforcement
                                       1155 21st St., N.W.
                                       Washington, DC 20581
                                       (202) 418-5400 (telephone)
                                       (202) 418-5523 (facsimile)
                                       dullman@cftc.gov
                                       phayeck@cftc.gov
                                       trodriguez@cftc.gov
                                       jmahoney@cftc.gov
                                       jmccarthy@cftc.gov
                                       lhynes@cftc.gov

                                       Michael R. Berlowitz
                                       140 Broadway, 19th Floor

New York, NY 10005
(646) 746-9759 (telephone)
(646) 746-9940 (facsimile)
mberlowitz@cftc.gov

**ATTORNEYS FOR PLAINTIFF**
**COMMODITY FUTURES TRADING COMMISSION**

## CERTIFICATE OF SERVICE

I hereby certify that on November 4, 2016, service of the foregoing document was made

on the following parties via ECF:

Michael S. Kim, Esq.
Jonathan Cogan, Esq.
Jason Manning, Esq.
Kelly Karneeb, Esq.
Melanie L. Oxhorn, Esq.
Kelly Spatola, Esq.
Kobre & Kim LLP
800 Third Avenue
New York, New York 10022

Andrew C. Lourie, Esq.
Kobre & Kim LLP
1919 M Street, N.W.
Washington, DC 20036

Attorneys for Defendants

/s/ Lucy C. Hynes
Lucy C. Hynes