UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES COMMODITY FUTURES TRADING COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>DONALD R. WILSON AND DRW INVESTMENTS, LLC,<br><br>Defendants. | 13-7884 (RJS) |

**PLAINTIFF UNITED STATES COMMODITY FUTURES TRADING COMMISSION'S MEMORANDUM IN SUPPORT OF ITS MOTION *IN LIMINE* NO. 3 TO EXCLUDE ANY EVIDENCE AND TESTIMONY CONCERNING THE NFA REPORT AND THE JEFFERIES ARBITRATION**

U.S. Commodity Futures Trading
  Commission
Division of Enforcement
1155 21st St., N.W.
Washington, DC 20581
(202) 418-5400 (telephone)
(202) 418-5523 (facsimile)

**ATTORNEYS FOR PLAINTIFF COMMODITY FUTURES TRADING COMMISSION**

**TABLE OF CONTENTS**

BACKGROUND ...................................................................................................................... 2

    I.    The NFA Report ......................................................................................... 2

    II.   The Jefferies Arbitration ............................................................................ 4

ARGUMENT ........................................................................................................................... 5

    I.    The NFA Report Should be Excluded Because it is Not Relevant, is Hearsay, and its Probative Value is Substantially Outweighed by the Dangers of Unfair Prejudice, Undue Delay, and Wasting Time ........................................................ 6

    II.   Evidence and Testimony Relating to the Jefferies Arbitration is Not Relevant, is Inadmissible Hearsay, and Would Be Unfairly Prejudicial to the Commission, Cause Undue Delay, and Waste the Court's Time. ....................... 10

CONCLUSION ...................................................................................................................... 12

# **TABLE OF AUTHORITIES**

## **CASES**

*Arlio v. Lively*,
  474 F.3d 46 (2d Cir. 2007) ................................................................................... 6, 10, 11, 12

*Beech Aircraft Corp. v. Rainey*,
  488 U.S. 153 (1988) ............................................................................................................. 8

*Cary Oil Co., Inc. v. MG Refining & Mktg., Inc.*,
  257 F. Supp. 2d 768 (S.D.N.Y. 2003) ............................................................................... 12

*CFTC v. Amaranth L.L.C.*,
  554 F. Supp. 2d 523 (S.D.N.Y. 2008), *reconsideration denied*, 554 F. Supp. 2d 523
    (S.D.N.Y. 2008) ................................................................................................................ 4

*CFTC v. Wilson*,
  27 F. Supp. 3d 517 (S.D.N.Y. 2014) ................................................................................... 4

*City of New York v. Pullman, Inc.*,
  662 F.2d 910 (2d Cir. 1981), *cert. denied*, 454 U.S. 1164 (1982) .................................... 8, 9

*Daubert v. Merrell Dow Pharm., Inc.*,
  509 U.S. 579 (1993) ........................................................................................................... 11

*Gerber v. Computer Assoc. Int'l, Inc.*,
  303 F.3d 126 (2d Cir. 2002) ................................................................................................ 6

*Guidi v. Inter-Continental Hotels Corp.*,
  No. 95 Civ. 9006 (LAP), 2003 WL 1907904 (S.D.N.Y. Apr. 16, 2003) .......................... 12

*Highland Capital Mgmt., L.P. v. Schneider*,
  551 F. Supp. 2d 173 (S.D.N.Y. 2008) ................................................................................. 5

*In re Agent Orange Prod. Liab. Litig.*,
  611 F. Supp. 1223 (E.D.N.Y. 1985), *aff'd* 818 F.2d 187 (2d Cir. 1987) ......................... 8-9

*Li v. Canarozzi*,
  142 F.3d 83 (2d Cir.1998) ................................................................................................... 6

*Luce v. United States*,
  469 U.S. 38 (1984) ............................................................................................................... 5

*M.A.R. v. United States*,
  No. 09 Civ. 1727 (KBF), 2011 WL 6188726 (S.D.N.Y. Dec. 12, 2011) ........................... 6

*Paolitto v. John Brown E. & C., Inc.*,
  151 F.3d 60 (2d Cir. 1998) ................................................................................................... 9

*Park W. Radiology v. CareCore Nat. LLC*,
  675 F. Supp. 2d 314 (S.D.N.Y. 2009) ............................................................................ 11, 12

*Polin v. Wisehart & Koch*,
  No. 00 Civ. 9624 (DLC), 2004 WL 1944721 n.3 (S.D.N.Y. Sept. 2, 2004) .......................... 11

*United States v. Birney*,
  686 F.2d 102 (2d Cir. 1982) ................................................................................................... 6

**RULES**

Fed. R. Civ. P. 30(b)(6) .................................................................................................................. 3

Fed. R. of Evid. 402 ................................................................................................................. 1, 6

Fed. R. of Evid. 403 ................................................................................................................. 1, 6

Fed. R. Evid. 801 ...................................................................................................................... 6, 7

Fed. R. of Evid. 802 ................................................................................................................. 6, 7

**MISCELLANEOUS**

*About NFA: Introduction*, National Futures Ass'n, http://www.nfa.futures.org/ NFA-
  about-nfa/index.html (last visited Nov. 1, 2016) ................................................................... 2

*About NFA: How NFA fights fraud and abuse*, National Futures Ass'n,
  http://www.nfa.futures.org/NFA-about-nfa/who-we-are/how-NFA-fights-fraud-and-
  abuse.HTML (last visited Nov. 1, 2016) ................................................................................ 2

*CFTC Glossary: National Futures Association*, Commodity Futures Trading Comm'n,
  http://www.cftc.gov/ConsumerProtection/EducationCenter/ CFTCGlossary/index.htm#N
  (last visited Nov. 1, 2016) ...................................................................................................... 2

Pursuant to the Federal Rules of Evidence and this Court's inherent power to control the presentation of evidence at trial, Plaintiff U.S. Commodity Futures Trading Commission (the "Commission"), respectfully submits the following Memorandum in Support of its Motion *In Limine* No. 3 to Exclude Any Evidence and Testimony Concerning the NFA Report and the Jefferies Arbitration.

The Commission seeks to exclude the National Futures Association's ("NFA") memorandum to file dated September 12, 2011 (the "NFA Report"), and any evidence and testimony concerning the NFA Report. First, the NFA is a member-funded, self-regulatory organization that has no authority to enforce the Commodity Exchange Act (the "Act"). Second, its review was extremely limited in scope—including not investigating DRW's intent to define prices in any capacity—and therefore did not make a determination as to whether DRW's bidding activity violated the Act. Third, the NFA Report is dated September 12, 2011, which ***completely*** post-dates DRW's manipulative scheme that ended on August 12, 2011; therefore, any argument that DRW contemporaneously relied upon the NFA Report to justify its manipulative conduct is temporally impossible. *See* Rule 56.1 Statement, ECF No. 105 ("Statement") ¶ P2 (undisputed at Summary Judgment Phase that the Relevant Period to the Complaint is January 24, 2011 through August 12, 2011).

Consequently, the NFA Report is not relevant to this litigation, as required by Federal Rule of Evidence 402. Even if the Court found the NFA Report to be relevant, the report and any related evidence should be excluded because it is inadmissible hearsay. Finally, all evidence regarding the NFA Report should be excluded under Federal Rule of Evidence 403 because the dangers of unfair prejudice to the Commission, undue delay and wasting time outweigh the report's probative value.

For similar reasons, the Commission also seeks to exclude all evidence and testimony from, or regarding, the arbitration captioned *Jefferies & Co. v. Nasdaq OMX Grp., Inc.* (the "Jefferies Arbitration"). First, the Jefferies Arbitration is not relevant to this action because DRW was not a party to the arbitration, nor does it concern DRW's trading activity. Second, the Jefferies Arbitration decision, and testimony, exhibits and expert reports from the arbitration are inadmissible hearsay. Third, all evidence relating to the Jefferies Arbitration should be excluded under Rule 403 because it would unduly delay the trial, waste the Court's time, and be unfairly prejudicial to the Commission.

## BACKGROUND

### I. The NFA Report

The NFA is a member-funded, self-regulatory organization for the U.S. derivatives industry. *See About NFA: Introduction*, NATIONAL FUTURES ASS'N, http://www.nfa.futures.org/NFA-about-nfa/index.html (last visited Nov. 1, 2016). The NFA is "responsible—under CFTC oversight—for certain aspects of the regulation of [its members,] focusing primarily on the qualifications and proficiency, financial condition, retail sales practices, and business conduct of these futures professionals." *CFTC Glossary: National Futures Association*, COMMODITY FUTURES TRADING COMM'N, http://www.cftc.gov/ConsumerProtection/EducationCenter/CFTCGlossary/index.htm#N (last visited Nov. 1, 2016). The NFA's authority is limited to enforcing its own rules on its members; it does not have authority to interpret or enforce the Act. *See About NFA: How NFA fights fraud and abuse*, NATIONAL FUTURES ASS'N, http://www.nfa.futures.org/NFA-about-nfa/who-we-are/how-NFA-fights-fraud-and-abuse.HTML (last visited Nov. 1, 2016).

2

On or around August 4, 2011, at the request of the NASDAQ OMX Futures Exchange ("NFX"), the NFA reviewed DRW's bids in the IDEX USD Three-Month Interest Rate Swap Futures Contract (the "Three-Month Contract"). *See* Memorandum To File from Benjamin Cooper: DRW Order Activity from 1/24/11 to 8/3/11, IDEX Interest Rate Swap Futures Contract, NFX Request to Review (Sept. 12, 2011) ("NFA Report"), Ex. D118 ("Ex. D118") at NFA-CFTC-0000714.00003.[1]  NFX requested that the NFA review DRW's bids because International Derivatives Clearing Group, LLC ("IDCG")[2] had expressed "continued concern" about whether the timing of DRW's bids was "manipulative."  *See* Ex. D118 at NFA-CFTC-0000714.00010.  In response, the NFA conducted a limited "written review" for NFX; it did not open a "formal" case or investigation.  *See* Rose Dep. Tr., 174:5-16; 181:17-183:8 (explaining that a formal case "would be more expansive" than a written review).[3]  Notably, the NFA did not "reach[ ] out to [DRW]," analyze or even "look[ ] for intent," or make a "detail[ed]" inquiry as to "what happened with all [of DRW's] trades and orders."  Rose Dep. Tr. 183:9-184:3.  In fact, the scope of the NFA's review was confined to examining DRW's bids under NFX's rules and did not "make a legal conclusion under the Commodity Exchange Act[.]"  Rose Dep. Tr. 185:24-

---

[1] "Ex. D__" refers to documents identified in Defendants' Exhibit List.  Per the Court's Pre-Trial Order, defendants are providing the Court with binders containing these proposed trial exhibits, which will correspond to the exhibit numbers cited in this memorandum.  If the Court would prefer, plaintiff is prepared to provide the Court with separate copies of each proposed trial exhibit referenced herein.

[2] IDCG is the parent company of International Derivatives Clearinghouse, LLC ("IDCH"), the exchange on which the Three-Month Contract was traded.

[3] Russell Rose testified on behalf of the NFA pursuant to Fed. R. Civ. P. 30(b)(6) and defendants have designated significant portions of Rose's testimony for use at trial.  The Commission seeks to exclude the transcript of Rose's testimony in its entirety because the sole purpose of his testimony was to describe the NFA's 2011 review, which is inadmissible for the reasons stated in this memorandum.

186:14.  The NFA Report concluded that DRW's orders "were generally entered and allowed to have market exposure prior to deletion, which appear[ed] to mitigate the probability of [DRW] utilizing manipulative order strategies to protect or improve established positions."[4]  Ex. D118 at NFA-CFTC-0000714.00007.

Defendants have used the NFA Report and documents concerning the report[5] to claim that (1) the NFA reviewed DRW's bids on the Three-Month Contract and did not find them to be "manipulative" or "otherwise problematic;" and (2) Defendants "lacked fair warning" that their conduct was unlawful (a defense that has since been denied by the Court).  See Defs.' Mem. in Supp. of Mtn. for Summary Judgment at 19-20, 27, 47; Statement ¶ D130.

## II.   The Jefferies Arbitration

On September 13, 2010, Jefferies & Co. ("Jefferies") established positions in the Three-Month Contract, to which DRW was its counterparty.  See *Jefferies & Co. v. Nasdaq OMX Grp., Inc.*, Findings of Fact and Conclusions of Law (Jan. 9, 2013) , Ex. D110 ("Ex. D110") at JEF-CFTC-476415-16.  After Jefferies terminated its positions in the Three-Month Contract, it entered into arbitration with IDCG, IDCH, and its parent company, NASDAQ OMX Group, Inc.

---

[4] The NFA's "conclusion" proves the Commission's point: that the NFA's review is irrelevant to whether defendants engaged in manipulation under the Act.  "Exposing" bids to the market does not negate defendants' intent to manipulate that market.  To the contrary, in a classic "banging the close" case, a manipulator actually consummates many trades during the settlement period— a step further than simply "exposing" bids to the market—"with the intent of artificially affecting the price of the security, and not for any legitimate economic reason, [which] can constitute market manipulation."  *CFTC v. Amaranth L.L.C.*, 554 F. Supp. 2d 523, 532-34 (S.D.N.Y. 2008), *reconsideration denied*, 554 F. Supp. 2d 523 (S.D.N.Y. 2008); *see also CFTC v. Wilson*, 27 F. Supp. 3d 517, 536 (S.D.N.Y. 2014) (explaining that "banging the close" or placing orders near or during the close of the market to affect the closing price—if accompanied by evidence of manipulative intent—is one type of illegal manipulative activity).

[5] Defendants seek to admit Exs. D87, D112-D120, and D122-D123, which include the NFA Report (Ex. D118) and documents relating to the NFA's review.  Like Rose's testimony, these documents, and any argument or testimony regarding these documents, should be excluded for the reasons stated herein.

4

("NASDAQ"), claiming fraud and breach of contract. *See* Ex. D110 at JEF-CFTC-476421. Specifically, Jefferies' claims were brought under New York state law and did not relate to DRW's trading activities, but focused solely on the alleged actions undertaken by IDGG, IDCH, and NASDAQ. Ex. D110 at JEF-CFTC-476421-33. On January 9, 2013, the arbitration panel issued its decision against Jefferies. *See generally* Ex. D110.

Defendants have relied on evidence and testimony from the Jefferies Arbitration, including the arbitration decision,[6] to perpetuate the argument that (1) all market participants had access to the same information that defendants relied upon in determining that the Three-Month Contract had convexity bias; (2) the Three-Month Contract was not economically equivalent to other over-the-counter interest rate swap products; and (3) the "par rates on Jefferies's [Three-Month Contracts entered into with DRW] should have been higher at the initiation of those trades." *See* Statement ¶¶ D38, D87; Mem. of Law in Support of Defs.' Mot. for Summ. J., ECF No. 112, at 7.

## ARGUMENT

A district court's inherent authority to manage the course of its trials encompasses the right to rule on motions *in limine*. *See Highland Capital Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 176 (S.D.N.Y. 2008) (citing *Luce v. United States,* 469 U.S. 38, 41 n.4 (1984)). The purpose of a motion *in limine* is "to aid the trial process by enabling the court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Id.* (internal quotations omitted).

---

[6] Defendants seek to admit Exs. D86, and D88-D111, which include the Jefferies Arbitration decision (Ex. D110) and evidence from the arbitration. These documents, and any argument or testimony regarding these documents, should be excluded for the reasons stated in this memorandum.

5

The Federal Rules of Evidence govern the admissibility of evidence at trial. *M.A.R. v. United States*, No. 09 Civ. 1727 (KBF), 2011 WL 6188726, at *1 (S.D.N.Y. Dec. 12, 2011). Under Federal Rule of Evidence 402, evidence must be relevant to be admissible. *Id.* (citing FED R. EVID. 402); *Arlio v. Lively*, 474 F.3d 46, 52 (2d Cir. 2007). Evidence is relevant if it "tends to prove a fact that is of consequence to the determination of the action[;] [i]f it does not tend to prove a material fact, it is irrelevant." *Arlio*, 474 F.3d at 52 (explaining that a material fact "is one that would affect the outcome of the suit under the governing law").

Further, evidence is hearsay, and not admissible at trial, if it is an out-of-court statement being offered for the truth of the matter asserted. FED. R. EVID. 801, 802. The term "statement" includes written assertions. FED. R. EVID. 801.

Finally, even if evidence is admissible, Federal Rule of Evidence Rule 403 grants courts discretion to exclude it if the probative value of the evidence is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. FED R. EVID. 403. Prejudice is "the unfair advantage that results from the capacity of the evidence to persuade by illegitimate means." *United States v. Birney*, 686 F.2d 102, 106 (2d Cir. 1982). In applying Rule 403, "the trial judge has broad discretion to weigh the probative value of the evidence against the negative factors." *Gerber v. Computer Assoc. Int'l, Inc.*, 303 F.3d 126, 137 (2d Cir. 2002) (citing *Li v. Canarozzi*, 142 F.3d 83, 88 (2d Cir.1998)).

I. **The NFA Report Should be Excluded Because it is Not Relevant, is Hearsay, and its Probative Value is Substantially Outweighed by the Dangers of Unfair Prejudice, Undue Delay, and Wasting Time**

The NFA Report has no bearing on this action. It was a limited, informal review that did not examine any of the elements of attempted or perfected manipulation under the Act—nor

6

could it because the NFA has no such enforcement authority. *See* Rose Dep. Tr., 181:17-183:08 (testifying that "a formal case would be more expansive [than the written review the NFA conducted]. [I]t would be reaching out to the firm . . . it would be more in detail . . . looking for intent, and then basically what happened with all these trades and orders."). The NFA did not speak to DRW or any of its traders, nor did it collect or review any of the trader's emails. Rose Dep. Tr. at 183:1-12; 183:24-184:3. Indeed, the NFA's 30(b)(6) witness testified that the NFA only completed a review for the NFX exchange; it did not endeavor to analyze DRW's bidding behavior relative to IDCH's rules, or make any conclusions about DRW's conduct under the Act's anti-manipulation provisions. Rose Dep. Tr. 186:7-187:19. The NFA also did not consider any evidence regarding DRW's intent, which is a key element of manipulation under the Act. Rose Dep. Tr. 183:20-23, Mot. Ex. 1. Therefore, DRW's use of the NFA Report to support its claim that it did not illegally manipulate the market is inappropriate because it misrepresents the scope, substance, and conclusions of the report. As such, the NFA Report and any related evidence and testimony is not relevant to this action, and therefore is inadmissible under Rule 402.

Additionally, the Court should exclude the NFA Report and all related evidence because they are inadmissible hearsay. FED. R. EVID. 801, 802. These documents are out-of-court written statements offered to prove the truth of the assertions in the documents, and the declarants will not be present at trial.

Last, the final September 12, 2011 NFA Report *completely* post-dates DRW's manipulative scheme that ended on August 12, 2011, so any argument that DRW contemporaneously relied upon the NFA Report to justify its manipulative conduct is temporally

7

impossible.  *See* Statement ¶ P2 (undisputed at Summary Judgment Phase that the Relevant Period to the Complaint is January 24, 2011 through August 12, 2011).

Even if the Court found the NFA Report to be relevant and not hearsay, the report and all related evidence should be excluded under Rule 403 because their potential to be unfairly prejudicial to the Commission, cause undue delay, and waste the Court's time substantially outweighs their negligible probative value.  Trial courts have the "discretion, and indeed the obligation [under] the Federal Rules [of Evidence] dealing with relevance and prejudice," to exclude reports from third parties that would protract the proceedings or be unduly prejudicial. *See Paolitto v. John Brown E. & C., Inc.*, 151 F.3d 60, 65 (2d Cir. 1998) (quoting *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 167-68 (1988)); *see also City of New York v. Pullman, Inc.*, 662 F.2d 910, 915 (2d Cir. 1981), *cert. denied*, 454 U.S. 1164 (1982).

Exclusion of this evidence under Rule 403 would be consistent with Second Circuit precedent.  For example, in *Pullman*, a defendant appealed the decision of the district court to exclude a report written by an agency, and related testimony, in a suit brought by the City of New York.  *See* 662 F.2d at 915.  While affirming the district court's exclusion of the report as hearsay, the Second Circuit observed that the report could properly be excluded under Rule 403.  *Id*.  The court explained that the agency's report was "prepared for very different purposes tha[n] those for which it was offered at trial" and therefore, would have been presented to the fact finder "in 'an aura of special reliability and trustworthiness' which would not have been commensurate with its actual reliability."  *Id*.  Additionally, the court noted that the report was properly excluded because the admission of the report would have protracted the trial "with an inquiry into collateral issues regarding the accuracy of the report and the methods used in its compilation."  *Id*.; *see also In re Agent Orange Prod. Liab. Litig.*, 611 F. Supp. 1223, 1256

8

(E.D.N.Y. 1985), *aff'd* 818 F.2d 187 (2d Cir. 1987) ("The waste-of-time ground for exclusion is particularly persuasive when detailed rebuttal testimony would be necessary to establish that the proffered evidence lacks probative worth.").

The same dangers are present in this case. The NFA's review was conducted for a fundamentally different purpose than that for which defendants seek to offer it for at trial—to establish that they did not violate the Act's anti-manipulation provisions. Most importantly, the NFA did not—because it cannot—evaluate defendants' manipulative bidding behavior under the Act. The NFA merely undertook a limited review at the request of an exchange, which the NFA admitted is narrower in scope than a formal investigation. This review did not involve the collection evidence from, or communications with, any DRW employees. It did not make any inquiry as to traders' specific intent in placing the bids—a central issue in this trial. Consequently, defendants' offering of a self-regulatory agency's report would be unfairly prejudicial to the Commission because defendants present the report with an "aura of special reliability and trustworthiness" which, in reality, is not "commensurate with its actual reliability." *Pullman*, 662 F.2d at 915.

Additionally, admission of evidence concerning the NFA Report would significantly sidetrack the proceedings because the Commission would need to establish the points discussed above regarding the narrow scope of the NFA's authority; the abbreviated methods of inquiry taken in the review; the limited amount of information reviewed; and other facts evidencing the NFA Report's lack of relevance and reliability. Such an exercise would cause undue delay and be a waste of the Court's time. Accordingly, the NFA Report and any evidence and testimony referencing the report should be excluded under Rule 403.

II. **Evidence and Testimony Relating to the Jefferies Arbitration is Not Relevant, is Inadmissible Hearsay, and Would be Unfairly Prejudicial to the Commission, Cause Undue Delay, and Waste the Court's Time**

Evidence deriving from the Jefferies Arbitration suffers from the same infirmities as the NFA Report. Therefore, such evidence should not be admitted at trial.

As an initial matter, the arbitration decision, exhibits and testimony from the decision, and any trial testimony concerning the arbitration are not relevant to whether defendants engaged in perfected or attempted manipulation under the Act because the Jefferies Arbitration involved different parties and different legal issues. The Jefferies Arbitration involved four entities—Jefferies, IDCG, IDCH, and NASDAQ—that are not parties to this litigation. Furthermore, the arbitration concerned IDCH's and IDCG's alleged misrepresentations to Jefferies under New York State law; it did not examine the question of whether DRW's trading activity was manipulative under the Act.[7] *See* Ex. D110 at JEF-CFTC-476421-33. The arbitration panel's decision and all related evidence are therefore not relevant to this case. *See Arlio*, 474 F.3d at 52 (finding abuse of discretion where district court admitted evidence of prior arbitration decision involving plaintiff because arbitration addressed issues not in dispute at trial).

The Jefferies Arbitration decision and the exhibits and testimony from the decision are also hearsay, for which no exception is available. For example, defendants have relied on an expert report submitted by Jefferies during the arbitration to establish that the "par rates on Jefferies's [positions in the Three-Month Contract] should have been higher," yet defendants are

---

[7] The decision explicitly noted that the Act did not apply to the arbitration dispute. *See* Ex. D110 at JEF-CFTC-476421-23.

10

not calling this expert witness to testify at trial.[8]  *See* Statement ¶ D87 (citing "Expert" Report of Chudozie Okongwu Prepared at the Request of Jefferies & Co., Oct. 9, 2012, Ex. D109). Defendants also seek to admit witness testimony and exhibits from the arbitration.  *See supra* n.6.  However, courts in this jurisdiction routinely exclude arbitration opinions involving one or both of the <u>same parties</u>—let alone entirely different parties—as inadmissible hearsay when such opinions are used "to prove the substance and outcome of the arbitration."  *See Park W. Radiology v. CareCore Nat. LLC*, 675 F. Supp. 2d 314, 329–30 (S.D.N.Y. 2009); *see also Arlio*, 474 F.3d at 53 (noting that "[c]ourts are reluctant to cloud the issues in the case at trial by admitting evidence relating to previous litigation involving one or both of the same parties") (alteration in original); *Polin v. Wisehart & Koch*, No. 00 Civ. 9624 (DLC), 2004 WL 1944721, at *1 n.3 (S.D.N.Y. Sept. 2, 2004) (noting that arbitration opinion, on its face, appeared to constitute hearsay if offered for truth of matter asserted).  The Court should reach the same result here because that is exactly what defendants seek to do with the Jefferies Arbitration decision and related exhibits and testimony—establish the truth of statements made by out-of-court declarants in an arbitration under New York State law to which neither the Commission nor DRW were parties.

Finally, even if the Court determined that the Jefferies Arbitration and related evidence were relevant and not hearsay, they should be excluded under Rule 403 because their admission would be unfairly prejudicial to the Commission, cause undue delay, and waste this Court's time. Rule 403 is "properly utilized to prevent [a] decision based on a prior finding—in essence, ratifying the earlier decision—instead of basing its verdict on the evidence presented in the

---

[8] Notwithstanding the fact that the arbitration exhibits contain hearsay, defendants have not established the appropriate foundation for admitting this "expert's" report under *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

11

instant case." *See Guidi v. Inter-Continental Hotels Corp.*, No. 95 Civ. 9006 (LAP), 2003 WL 1907904, at *1 (S.D.N.Y. Apr. 16, 2003) (rejecting admission of facts and results from Egyptian proceeding because circumstances of review were "not congruent" with those in federal district court proceeding); *Arlio*, 474 F.3d at 53 ("District courts must assiduously guard . . . against the siren song of irrelevant and prejudicial prior determinations."); *Park West Radiology*, 675 F. Supp. 2d at 330 (excluding arbitration decision because of "prejudicial effect"); *Cary Oil Co., Inc. v. MG Refining & Mktg., Inc.*, 257 F. Supp. 2d 768, 773-74 (S.D.N.Y. 2003) (excluding arbitration decision and related testimony under Rule 403 because it could have a "prejudicial effect").

If the Jefferies Arbitration decision and related evidence were not excluded, the Commission would need to put forth evidence at trial showing the inherent differences between the facts and law at issue in the arbitration and those at issue in this case; the unreliability of the decision and related evidence because of the multiple levels of incurable hearsay; and the foundation problems surrounding the Jefferies' expert report—all of which would significantly delay the trial and waste the Court's time. In turn, the Court should exercise its discretion under Rule 403 to exclude all evidence concerning the Jefferies Arbitration.

## CONCLUSION

For the reasons set forth above, the Commission moves to exclude all evidence and testimony concerning the NFA Report and the Jefferies Arbitration.

Dated: November 4, 2016          Respectfully Submitted,

/s/ Daniel Ullman
A. Daniel Ullman II (*pro hac vice*)
Paul G. Hayeck (*pro hac vice*)
Traci Rodriguez (*pro hac vice*)
Jason Mahoney (*pro hac vice*)

12

Jonah McCarthy
Lucy C. Hynes (*pro hac vice*)
U.S. Commodity Futures Trading Commission
Division of Enforcement
1155 21st St., N.W.
Washington, DC 20581
(202) 418-5400 (telephone)
(202) 418-5523 (facsimile)
dullman@cftc.gov
phayeck@cftc.gov
trodriguez@cftc.gov
jmahoney@cftc.gov
jmccarthy@cftc.gov
lhynes@cftc.gov

Michael R. Berlowitz
140 Broadway, 19th Floor
New York, NY 10005
(646) 746-9759 (telephone)
(646) 746-9940 (facsimile)
mberlowitz@cftc.gov

**ATTORNEYS FOR PLAINTIFF**
**COMMODITY FUTURES TRADING COMMISSION**

## **CERTIFICATE OF SERVICE**

      I hereby certify that on November 4, 2016, service of the foregoing document was made on the following parties via ECF:

Michael S. Kim, Esq.
Jonathan Cogan, Esq.
Jason Manning, Esq.
Kelly Karneeb, Esq.
Melanie L. Oxhorn, Esq.
Kelly Spatola, Esq.
Kobre & Kim LLP
800 Third Avenue
New York, New York 10022

Andrew C. Lourie, Esq.
Kobre & Kim LLP
1919 M Street, N.W.
Washington, DC 20036

Attorneys for Defendants

                                                  /s/ Lucy C. Hynes
                                                  Lucy C. Hynes